Kinset C. J.
delivered the opinion of the court.
At the former trial of this cause, it was perceived that it involved several matters which deserved serious and mature consideration, before the principles of law arising from them were settled and adopted by this court as rules of property. For this reason it was agreed by the parties, in order that they might have the benefit of a verdict of a jury upon the point of fraud, and the deliberate opinion of the court on the questions of law, to call upon the jury to determine whether the deed from Robert Hutchinson to John Fly was fraudulent or not; and if they should be of opinion that this deed was bona fide, then all the other facts were to be stated specially for the opinion of the court. We should have been glad had this course been adopted on the present occasion, but as it has not, the court are under the necessity of giving their opinion in this collateral way, in a more hasty manner, and with less time for consideration than they would have wished.
The present motion for a nonsuit has been made upon three grounds.
1 st It is contended that the title of the defendant is paramount to that set up by the plaintiff, because William Hutchinson who was in his life time seised of the lands in controversy, had before his decease to wit in April 1763, entered into a bond to the king as security for Brook's that he would faithfully discharge the duties of his office of sheriff; — which bond became forfeited in the life time of Hutchinson. It is contended that this bond was in the nature of a recognizance, and operated so as to bind the land from the date, or at least *133 ¿rom. ilie time that it became forfeited by a breach of tiie condition; and that no subsequent conveyance by William Hutchinson., or his heir, could discharge the land of this encumbrance.
%d That John Ely purchased the lands in controversy with notice of this encumbrance, and that therefore he, and those claiming under him, stand precisely in .the same predicament with the original obligee or his immediate heir.
3d That the purchase by Ely from Robert Hutchinson was made, not only with a notice of this existing encumbrance, but in fact during the pendency of an action brought on this bond to the king for the breach of the condition, and its object being to deprive the king of the benefit of the obligation by removing or disposing of the property which was to answer the debt, the conveyance was legally void.
The court do not deem it necessary or even expedient to give an opinion upon the two first grounds upon which this motion has been made, as they unanimously concur in the opinion that the third reason is sufficient to warrant them in nonsuiting the plaintiff.
It has long been settled in this state, that lands are assets in the hands of an executor or administrator for the payment of debts, and that upon an action brought against either, the real estates of the testator or intestate are chattels, may be taken in execution and sold for the payment of debts, and this without making the heir a party to the suit, (a) This is now grown into custom, it has become a fixed rule of property and to introduce a different doctrine at this time, would be to unsettle and to overturn a settled principle of law; and to unfix many titles which rest upon this foundation. As soon therefore, as an action is commenced against an executor or administrator, which can affect the lands of the deceased, we consider it as notice to the whole world, and whoever purchases land of the heir under such circumstances, must do it at his peril. It never can be permitted to an heir, after a *134 legal claim has thus been legally preferred, to oust the creditor of his means of obtaining satisfaction for his debt, by taking the assets out of the hands of the administrator or executor; the property must still be liable for these demands, and may be taken and sold to satisfy them in whosoever hands they may be found. A contrary opinion would open the door to the most serious inconveniences, and would be productive of the grossest frauds. If this court should establish it as a rule that an heir at law, after an action has been instituted against the executor or administrator, has it in his power to dispose of the real estate, and go off with the proceeds (as is in reality the state of the present case,) it ■would, tend to defeat the principle which the legislature evidently had in view and endeavoured to establish when they made lands chattels for the payment of debts, we mean the principle that all the real estate whatsoever, of every individual, should be held liable to satisfy his just debts; and give encouragement to practices too flagrantly vicious, too injurious to society ever to be countenanced by this court.
When a man contracts a debt all his estate is liable for the payment of it, and an heir who derives his right- exclusively from his ancestor, takes the estate subject to this liability, if the claim be prosecuted within a reasonable time. It is incumbent upon every purchaser, and it is not less within his power, than consistent with his duty, to make an inquiry into the title which he intends to buy, and if he is so far neglectful of his own interests as to omit to make it, it is far more reasonable that he should suffer from a deception against which it was so easy to guard himself, than that an honest creditor should be deprived of his just debt. It is the duty of courts of justice to make every construction in favour of such creditors, and to prevent attempts which may be attended with such pernicious consequences.
These remarks are of general application, and have governed the court in forming their opinion, but the case before us is a plain one. A man buys an estate of an heir at law, pending an actión against the administrator with legal, and, we think from the evidence we have heard we may say, with actual notice óf the debt or demand upon the estate. We *135 ,uc therefore clearly of opinion that on a purchase from the heir at law, thus made, no ejectment can he supported against a purchaser at a sheriff’s sale, under a judgment against the administrator, but the lands, notwithstanding such purchase from the heir at law, remained liable, and were lightly taken in execution and sold. (a)
Note. — -In the case before the court the administrator against; whom the judgment was obtained was also the heir at law who made the sale to Ely; but the court observed that though this might make the case stronger, it was not what constituted the foundation of the decision, their opinion went on the genera! grounds.
Let the plaintiff be nonsuited.

 Note — In the case of Woodruff v. Crane’s executors, in chancery .it was resolved by Patterson Chancellor, Chetwood and Kirkpatrick masters, — concurring, that on a bill to set up a bond the heir must be made co-dcfendant with the executors or administrators. — mss.

 Note. — In the case of Graff v. Smith’s Administrators 1 Dal. 481. some remarks are made by Shifipen President, which are applicable to the present case. “ The real estate is confessedly a fund for the payment of debts. It is a fund however that does not actually go into the hands of the executor or administrator, as assets in the ordinary course; but it is a fund made such by positive law in another form; that is, creditors may issue executions and sell it for the payment of their debts on a judgment against the executor or administrator; for it is not necessary, nor has it been usual to bring the action against the heir. The lands however go into the hands of the heir or devisee, between whom and the creditors there is no privity. They are made a fund for the payment of all debts, and must necessarily have been intended by the legislature to be a certain and not a precarious fund: for since it is declared that the creditor may take them in execution on a judgment against the executor or administrator, it is intended they should have the fruit of tne execution: — and this can no otherwise be, than by considering them as specifically fiable in whose hands soever they may be. See also Morris’ lessee v. Smith 4 Dall. 119.